CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 25 2006

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TOMMY E. VANDYKE,<br>Plaintiff, | )<br>) Civil Action No. 7:06CV00267<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| SOUTHWEST VIRGINIA REGIONAL<br>JAIL AUTHORITY, et al.,<br>Defendants. | ) By: Hon. Glen E. Conrad<br>) United States District Judge<br>) |

Tommy E. Vandyke, a Virginia inmate proceeding pro se, filed this civil rights action, pursuant to 42 U.S.C. § 1983, on May 2, 2006. The action is presently before the court on various pending motions. Defendants have filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Vandyke has filed motions to pursue and a motion to amend, bringing additional claims and adding new defendants. Having reviewed the record, the court will grant defendants' motion to dismiss. The court will also grant Vandyke's motions to pursue and his motion to amend. However, the new claims raised in the motion to amend will be summarily dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.

Defendants' Motion to Dismiss

A.  Background

Vandyke is presently incarcerated at Powhatan Correctional Center. At the time this action was filed, he was incarcerated at the Southwest Virginia Regional Jail in Abingdon. The following facts, taken from Vandyke's original complaint and his motions to pursue,[1] are relevant to defendants' motion.

---

[1] Because Vandyke's motions to pursue include additional facts that were not included in his original complaint, the court will construe and grant the motions as motions to amend.

In his first claim, Vandyke alleges that the jail did not have enough regular breakfast trays on the morning of February 19, 2006. As a result, Vandyke and several other inmates received styrofoam trays that were lacking apple juice. Although Vandyke specifically requested juice, his request was denied. Vandyke contends that the denial of juice was an act of prejudice that could have caused a riot.

In his second claim, Vandyke alleges that his chain and crucifix were confiscated upon his arrival to the jail, and that officers subsequently refused to return the items. He contends that the crucifix is the foundation of his Christian faith, and that cross-bearing is commanded by the Bible. Vandyke filed a grievance regarding the crucifix on February 17, 2006. A correctional officer advised Vandyke that the crucifix was taken because it had sharp points. Vandyke filed another request for the chain and crucifix on May 8, 2006. In response, Major Pinkerton advised Vandyke that he could not possess the necklace for safety reasons. Pinkerton emphasized that the crucifix "could be fashioned into a sharp object." Pinkerton gave Vandyke the option of having someone bring him another religious necklace that could not be made into a weapon, such as a chain with a circular charm. Pinkerton also noted that a cloth or thread crucifix would be acceptable.

B.   Standard of Review

Defendants have moved to dismiss Vandyke's original claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When deciding a motion to dismiss under this Rule, the court must determine "whether the complaint, under the facts alleged and under any facts that could be proved in support of the complaint, is legally sufficient." E. Shore Mkt., Inc. v .J.D. Assoc. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). The court must accept the allegations in

2

the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff. Id. The court should not dismiss a complaint for failure to state a claim, unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

C. Discussion

In order to state a claim under § 1983, a plaintiff must establish that he was deprived of rights secured by the Constitution or laws of the United States, and that the deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Having reviewed the record, the court agrees with defendants that Vandyke's allegations fail to raise a claim of constitutional magnitude, and therefore, are not actionable under § 1983.

1. Apple Juice

As previously stated, Vandyke alleges that he did not receive apple juice on the morning of February 17, 2006. While the Eighth Amendment to the United States Constitution protects inmates from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). In order to state a claim of constitutional significance, an inmate must allege facts which show that he has sustained a serious or significant physical or emotional injury as a result of the challenged conditions, and that prison officials acted with deliberate indifference. Strickler v. Waters, 989 F.2d 1375, 1379-1381 (4th Cir. 1993).

Applying these principles to Vandyke's allegations, the court agrees with defendants that he has failed to state a claim under the Eighth Amendment. Vandyke does not allege that jail

3

employees deprived him of other drinks or meals, or that he suffered any adverse physical or mental effects from not receiving apple juice on that one occasion. While Vandyke may be angry because most of the other inmates received juice with their breakfast trays, the alleged deprivation simply does not rise to the level of a serious or significant physical or mental injury. See White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993) (dismissing the plaintiff's claim that he only received two meals on weekends and holidays, since he made "no suggestion of any deleterious physical or mental effects from this meal schedule."). Accordingly, the court will grant defendants' motion to dismiss with respect to this claim.[2]

2. Crucifix

Vandyke also alleges that defendants violated his right to freely exercise his religion by confiscating the crucifix that he was wearing when he entered the jail. It is well established that the Free Exercise Clause of the First Amendment "extends to the prison environment." See Morrison v. Garraghty, 239 F.3d 648, 656 (4th Cir. 2001) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Ali v. Dixon, 912 F.2d 86, 88-89 (4th Cir. 1990)). Nonetheless, an inmate's constitutional rights can be limited to achieve legitimate penological objectives. O'Lone, 482 U.S. at 348. A decision that infringes upon an inmate's constitutional rights is valid if it is "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 87 (1987). In Turner, the Supreme Court identified four factors that are relevant in evaluating the reasonableness of a regulation or decision: (1) whether the disputed decision is logically connected to the legitimate government interest invoked to justify it; (2) whether the inmate has

---

[2]The court notes that Vandyke's conclusory allegations of prejudice also fail to state a separate claim for discrimination under the Equal Protection Clause of the Fourteenth Amendment. See Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (holding that an equal protection claim based on discrimination must allege discriminatory intent with more than mere conclusory assertions).

4

alternative means of exercising the right in question; (3) the impact that accommodation of the asserted right would have on other inmates, correctional officials, and the allocation of institutional resources; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. Turner at 89-90.

Applying the Turner factors to this claim, the court agrees with defendants that the decision to confiscate Vandyke's crucifix was constitutionally permissible. First, the jail has a legitimate interest in maintaining a safe and secure environment, Thornburgh v. Abbott, 490 U.S. 401, 415 (U.S. 1989), and the decision to prohibit Vandyke's religious necklace was reasonably related to that interest. Although Vandyke alleges that the crucifix, itself, is not sharp or pointed, the fact that it could be sharpened into a weapon posed a potential threat to security. Additionally, the record indicates that Vandyke had alternative means of exercising the right in question. Major Pinkerton specifically advised Vandyke that he could possess a crucifix made of cloth or thread. Pinkerton also indicated that he would consider approving another religious necklace, as long as the necklace had a safer design. Lastly, the decision to confiscate Vandyke's crucifix was not an "exaggerated response" to institutional concerns. Turner, 482 U.S. at 89. For these reasons, the court concludes that defendants did not violate Vandyke's First Amendment right to freely exercise his religion. Accordingly, the court will grant defendants' motion to dismiss with respect to this claim.

Plaintiff's Motion to Amend

After defendants filed their motion to dismiss on July 17, 2006, Vandyke filed a motion to amend his complaint to include three additional claims against new defendants. In the interest of efficient justice, the court will grant plaintiff's motion. However, inasmuch as the court finds that the allegations in the motion fail to state a claim upon which relief may be granted, the court

5

Case 7:06-cv-00267-GEC-mfu Document 36 Filed 08/25/06 Page 5 of 9 Pageid#: 121

will dismiss the claims without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).

    A.    <u>Religious Tithes</u>

Vandyke first alleges that employees in the jail's accounting department violated his right to freely exercise his religion by refusing to write a check from his inmate account to the Abingdon Church of Christ. Specifically, on June 19, 2006, Vandyke requested that $8.00 be withdrawn from his account and sent to the church. The following day, Vandyke's request was denied. Vandyke was informed that "[t]he jail will not write these kind[s] of checks out of [his] account."

As previously explained, a decision that infringes upon an inmate's constitutional rights is valid if it is "reasonably related to legitimate penological interests." <u>Turner</u>, 482 U.S. at 87. Having considered the applicable factors, the court concludes that the decision to deny Vandyke's request was so reasonably related. First, there is a logical connection between the disbursement restriction and the jail's legitimate interest in maintaining order and security. Such restrictions provide a means of controlling the use of inmate funds for illegal activities. <u>See</u> <u>Blankenship v. Gunter</u>, 707 F. Supp. 1137, 1139 (D. Neb. 1988), <u>aff'd</u>, 898 F.2d 625 (8th Cir. 1990). Additionally, accommodating the asserted right would have a significant impact on the jail's employees and resources. "In wrestling with whether requested donations ... to a particular church or other religious person or organization should be permitted, there would be raised the whole specter of the legitimacy of the disbursement such as whether the person or organization to whom a 'donation' is requested is in fact a religious organization and not someone who, for the moment, is fronting as such...." <u>Id.</u> To expect jail employees to investigate the legitimacy of every disbursement request would impose an "unnecessarily heavy burden." <u>Id.</u> Finally, Vandyke does not allege that he had no alternative means of sending religious tithes to his

church. For these reasons, the court concludes that Vandyke's First Amendment claim against the employees of the jail's accounting department must be dismissed.

B. Haircut

Vandyke next alleges that he was "denied proper hygiene, namely a haircut, from April 2006 until July 7, 2006." Vandyke "feel[s]" the delay was a "willful act of discrimination and prejudice." Exhibits attached to Vandyke's motion to amend indicate that on June 28, 2006, he filed a grievance alleging that he had been denied proper grooming. In response, Vandyke was advised that he could put his name on the jail's list for haircuts. On June 30, 2006, Vandyke filed another grievance requesting information as to why he had not received a haircut since April. On July 5, 2006, Vandyke was advised that the haircut procedures were being modified, and that he could put his name on the list for haircuts. Vandyke ultimately received a haircut two days later.

To the extent Vandyke's allegations can be construed to assert a living conditions claim under the Eighth Amendment, the claim is clearly without merit. While the delay in receiving a haircut may have been inconvenient or uncomfortable, there is no indication that the delay resulted in a serious or significant injury. See Strickler, 989 F.2d at 1380-1381. Moreover, to the extent Vandyke's allegations can be construed to assert an equal protection claim, it also fails, because his allegations of discrimination and prejudice are "merely conjectural and speculative." Douglas v. McCarty, 87 Fed. Appx. 299, 301-302 (4th Cir. 2003) (citing Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003)). Accordingly, Vandyke's claims related to the delay in receiving a haircut must be dismissed.

C. Legal Materials

Vandyke also alleges that officials at the jail violated his right to access the courts by not

7

permitting him to go to the library or obtain law books. It is well established that inmates have a fundamental right to "adequate, effective, and meaningful" access to courts. Bounds v. Smith, 430 U.S. 817, 822 (1977). However, in order to prove that this right has been violated, an inmate must show that he has suffered an actual injury or specific harm to his litigation efforts. Strickler, 989 F.2d at 1383; Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006). Because Vandyke has not alleged facts demonstrating any specific harm to his litigation efforts, his access to courts claim must be dismissed.

D. Retaliation

Finally, Vandyke alleges that he believes the delay in receiving a haircut and the denial of law books were acts of retaliation for filing the instant action. It is well settled that state officials may not retaliate against an inmate for exercising his constitutional rights, including his right to access the courts. See American Civ. Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). However, in order to state a cognizable retaliation claim under § 1983, an inmate "must allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right to access the courts and show that he suffered more than de minimis inconvenience." Goodman v. Smith, 58 Fed. Appx. 36, 38 (4th Cir. 2003) (citing Wicomico, 999 F.2d at 785-86). The inmate must also point to specific facts supporting his claim of retaliation. "[B]are assertions of retaliation do not establish a claim of constitutional dimension." Id. (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994)).

Based on these principles, the court concludes that Vandyke has failed to state a cognizable claim for retaliation. Vandyke does not point to any facts that would suggest that the actions of the jail employees were based on a retaliatory motive, and his conclusory assertions of

retaliation are legally insufficient. See Id. Accordingly, his retaliation claim must be dismissed.

## Conclusion

For the reasons stated, the court will grant defendants' motion to dismiss. The court will also grant plaintiff's motions to pursue, and plaintiff's motions to amend. However, the new claims raised in the motion to amend will be dismissed without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).

The Clerk is directed to send certified copies of this opinion and the accompanying order to plaintiff and counsel of record for defendants.

**ENTER**: This 25th day of August, 2006.

/s/ Glen Conrad
United States District Judge